**NORTHWESTERN OHIO RAILWAY & POWER CO v W & L E RAILWAY CO**

Ohio Appeals, 6th Dist, Ottawa Co

No 143. Decided May 23, 1932

Tracy, Chapman & Welles, Toledo, for plaintiffs in error.

John W. Hackett, Toledo, Charles H. Graves, Oak Harbor, and Squire, Sanders & Dempsey, Cleveland, for defendant in error.

WILLIAMS, J.

Defendant maintains that a final judgment should be entered in this court on the issues made on the petition. It is not questioned that the speed of plaintiff's train within the corporate limits was from 25 to 30 miles an hour. Upon trial the validity of the ordinance limiting the speed upon the steam railroad to not exceeding

8 miles per hour was questioned and much evidence was offered bearing upon the matter. In Oak Harbor the steam railroad line runs almost north and south and crosses the electric line nearly at right angles. To the north of the point of collision the steam railway track crosses the tracks of the New York Central Railway Company by an overhead bridge. Plaintiff maintained that its train could not have made the grade had the speed within the village not exceeded 8 miles per hour. This court is of the opinion that the ordinance was a valid one, notwithstanding this peculiar situation, as it could be met by operating shorter and lighter trains or employing more motive power. An ordinance enacted for the public safety is not made invalid merely because it may be a matter of inconvenience or expense to comply with it. This court has held valid an ordinance limiting the speed to 6 miles per hour within corporate limits. **N. Y. C. R. R. Co. v Blatt, 20 Oh Ap, 6th District, unreported, p. 378.**

Although the plaintiff was guilty of negligence per se, in violating the ordinance, it still remains to determine whether the question of proximate cause should be submitted to the jury or the court should say as a matter of law that negligence was the proximate cause of the collisiion or directly contributed to produce it. Defendant in its brief maintains that the collision could have been avoided for two reasons. We quote from the reply brief:

"(1) The defendants' conductor (Gettinger) would have had additional time to have gone further along plaintiff's track to flag the train and the warning would have been received by plaintiff in ample time to have stopped the train before reaching the crossing, for at eight miles an hour the train would only have required from 320 to 360 feet in which to stop, and

(2) Even if the defendants' conductor got no further along the track than he did (about 370 feet) plantiff's employes could have seen the warning signal and stopped the train before reaching the crossing, for plaintiff's witnesses testified that they could see 85 feet ahead of the cab of the engine, and they would have received the signal, had they been looking, when the head end of the engine was more than 420 feet from the crossing."

This is an excellent attempt to figure out mathematically how the engineer could have avoided the collision, but the question of proximate cause was one as to which different minds might well reach different conclusions, and it is our judgment that the trial court did not err in leaving to the jury the question whether the violation of the speed ordinance was the proximate cause of the collison or directly contributed thereto.

Final judgment should not be entered in this court in favor of the defendant.

The defendant submitted a request involving the doctrine of last clear chance. The court refused to give it to the jury upon the ground that the rule would not apply unless the engineman had actual notice of the presence of the stalled car on the crossing. In the general charge is the following:

"There can be no negligence of the plaintiff in the respect mentioned unless it appears from the evidence that the engineman in charge of said train saw the said car on the crossing and realized its danger and thereafter had time, in the exercise of ordinary care, to stop said train so as to prevent said collision. If you find from the evidence that the engineman in charge of said train saw said car on the crossing and realized its danger and thereafter had time, in the exercise of ordinary care, to stop said train and prevent said collision, then it was their duty so to do, and the failure to perform such duty under such circumstances would be negligence."

It is claimed by defendant that this part of the charge stated the doctrine of last clear chance and applied to the defendant. The rule as to this doctrine is stated in **Pennsylvania Co. v Hart, 101 Oh St, 190,** but it is clear from the opinion in that case that the doctrine is never applicable where there is no evidence tending to prove a state of facts which brings the case within the rule. In our judgment the doctrine had no application to any phase of the instant case. It is therefore not necessary for us to determine whether actual notice of the peril is required or not.

A careful reading of the portion of the charge above quoted shows that it does not lay down the rule of last clear chance, as it makes no reference to the fact that recovery might be had notwithstanding the person seeking to recover may have been guilty of negligence in going into the place of danger, if such negligence has ceased for a sufficient time prior to the accident to have enabled the other party to avoid it by the exercise of ordinary care after knowledge of the danger.

It is also claimed that the court erred in charging as follows:

"Again, if you find from the evidence that the plaintiff's said train and crew were in the perilous condition, as claimed

by the plaintiff, by the negligence of said crew, and where unable, in the exercise of ordinary care, to extricate themselves from the said perilous condition before said collision, and you further find from the evidence that the employes of the said electric train actually knew of the perilous condition of plaintiff's train and crew in time before said collision that they could, in the exercise of ordinary care, have coupled said cars, joined the air hoses and moved the car off the crossing, then it was their duty so to do and a failure to perform such duty under such circumstances would be negligence **solely and proximately** causing said collision."

This charge was erroneous for the reason that it would permit the plaintiff to recover notwithstanding the fact that it was guilty of negligence per se in violating the speed ordinance and such negligence directly and proximately contributed to produce the collision. The language used is also misleading for the reason that it implies that no duty rested on the crew of the electric train until its members knew of the perilous condition of plaintiff's train and crew.

The court submitted to the jury the question whether or not the defendant was guilty of negligence in not providing more than three men to operate its train. There was no error in charging upon this claim of negligence. It was the duty of the defendant to use ordinary care to provide sufficient men to manage the train with reasonable safety and there was evidence tending to show negligence of the defendant in this respect.

At the conclusion of the charge, counsel for defendant made the following statement:

"Let the record show that the defendants requested the court to amplify his charge and instruct the jury that if defendants' employes found that an emergency existed and thereafter, or after they recognized that an emergency did exist, the existence of the emergency and the fact the employes recognized that one did exist, must be taken into consideration in determining whether or not defendants' employes exercised ordinary care. That request to amplify the charge in that respect was refused, to which defendants excepted."

It might be said that in a sense an emergency existed when the car became stalled on the track and that it did suddenly stall was, of course, a fact which might be considered with all the other facts and circumstances proven on the trial in determining whether thereafter the defendant exercised ordinary care or was guilty of negligence in one or more respects claimed by the plaintiff. But there was no occasion for submitting to the jury the question whether an emergency existed without any definition as to what was meant by an emergency. Moreover, this request left it to the defendants' employes to determine whether there was an emergency. We are not willing to say that the court committed prejudicial error in refusing to amplify the charge in this respect.

The contention is made that the verdict is not sustained by sufficient evidence. This court has reached the conclusion that this contention is well-founded with reference to the issue of contributory negligence of the plaintiff, and is of the opinion that the verdict is manifestly against the weight of the evidence upon that issue.

We have examined all the questions presented and find no prejudicial error except as herein noted. For the reasons given, the judgment will be reversed and the cause remanded for a new trial.

LLOYD and RICHARDS, JJ, concur.